No. 23-2625

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

### TODD DeGEER,

Plaintiff-Appellant

v.

### UNION PACIFIC RAILROAD COMPANY,
Defendant-Appellee.

---

### PUBLIC JUSTICE
Amicus on behalf of Appellant

Appeal from the United States District Court
For the District of Nebraska
Case No. 8:23-cv-00010

The Honorable Robert F. Rossiter

---

### APPELLEE'S ANSWERING BRIEF

---

BAIRD HOLM, LLP
Scott P. Moore
Mark J. Goldsmith
1700 Farnam St., Ste. 1500
Omaha, NE 68102
Telephone: (402) 344-0500
Facsimile: (402) 344-0588
*Attorneys for Appellee*
*Union Pacific Railroad Company*

Appellate Case: 23-2625    Page: 1    Date Filed: 11/21/2023 Entry ID: 5337848

## SUMMARY OF THE CASE

In February 2016, six individuals commenced a broad class action litigation – *Harris v. Union Pacific* – on behalf of all current and former Union Pacific Railroad Company employees who had been removed from service related to fitness for duty examinations. Two and a half years later, in August 2018, the named plaintiffs in *Harris* moved for certification, and in so doing, class counsel – who, at that time, also individually represented Appellant Todd DeGeer – narrowed the class definition. In contrast to the class originally pleaded in the operative complaint, the *Harris* certification motion amended the definition to cover only those employees who had been subjected to a fitness for duty evaluation *as a result of a Reportable Health Event*.

DeGeer, however, had not experienced a Reportable Health Event. Thus, the revised *Harris* class definition excluded DeGeer as a putative class member, and Union Pacific never suggested otherwise. As of August 2018, DeGeer's interests were no longer being represented by the *Harris* plaintiffs, and his claims under the Americans with Disabilities Act were no longer subject to *American Pipe* tolling. DeGeer had to submit his EEOC charge by June 2019, and because he filed in May 2020, his ADA claims are time-barred. This Court should affirm the District Court's order granting Union Pacific's motion for judgment on the pleadings. Union Pacific requests 15 minutes of oral argument.

i

## CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1, Appellee Union Pacific Railroad Company, a Delaware corporation, is a wholly owned subsidiary of Union Pacific Corporation, a Utah corporation.  Union Pacific Corporation is publicly traded on the New York Stock Exchange.

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE .................................................................2

I. PROCEDURAL HISTORY .........................................................2

II. STATEMENT OF FACTS AND PLEADED ALLEGATIONS ..................3

    A. DeGeer's Tenure as a Conductor for Union Pacific. ..........................3

    B. The Applicable FRA Regulations. ....................................3

    C. DeGeer's 2017 Failed Color Vision Examinations............................4

    D. The *Harris* Class Action. ............................................5

    E. DeGeer Did Not Experience a Reportable Health Event. ..................11

    F. DeGeer Filed His EEOC Charge in 2020. .........................................12

SUMMARY OF THE ARGUMENT ...................................................13

ARGUMENT – DEGEER'S CLAIMS ARE TIME-BARRED...........................13

I. DEGEER WAS NOT A *HARRIS* PUTATIVE CLASS MEMBER ...........14

    A. The Unambiguous Operative Class Definition. ...............................14

    B. The *Harris* Class Definition Excluded DeGeer. ...............................15

    C. Counsel's Misunderstanding of the Class Definition Is Immaterial. ..................................................................18

    D. Union Pacific Never Produced a Class List in *Harris*. ......................18

II. *AMERICAN PIPE* TOLLING CEASED WHEN DEGEER'S COUNSEL EXCLUDED DEGEER FROM THE *HARRIS* CLASS. ...........21

    A. Equitable Tolling under *American Pipe*..........................................21

    B. *American Pipe* Tolling Ceases for Reasons Other Than Denial of Class Certification....................................................22

    C. *American Pipe* Tolling Ceases When a Certification Motion Narrows the Class Definition to Exclude a Putative Class Member. ...............................................................25

III. ALTERNATIVELY, *AMERICAN PIPE* TOLLING CEASES WHEN A CERTIFICATION DECISION NARROWS THE CLASS DEFINITION TO EXCLUDE A PUTATIVE CLASS MEMBER .............29

CONCLUSION ..........................................................................31

Appellate Case: 23-2625     Page: 4     Date Filed: 11/21/2023     Entry ID: 5337848

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams Pub. Sch. Dist. v. Asbestos Corp.*,
  7 F.3d 717 (8th Cir. 1993) ...................................................24

*Amalgamated Transit Union Loc. 1309 v. Laidlaw Transit Servs., Inc.*,
  2010 WL 582134 (S.D. Cal. Feb. 11, 2010)........................29

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974).......................................................1, 21

*Blankinship v. Union Pac. R.R. Co.*,
  2022 WL 16715467 (D. Ariz. Nov. 4, 2022) .....................20

*Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*,
  582 U.S. 497 (2017).....................................................22, 23

*China Agritech, Inc. v. Resh*,
  138 S.Ct. 1800 (2018)......................................................23

*Choquette v. City of New York*,
  839 F. Supp. 2d 692 (S.D.N.Y. 2012) ...............................30

*Collins v. Vill. of Palatine*,
  875 F.3d 839 (7th Cir. 2017) ...........................................24

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*,
  934 F. Supp. 2d 1219 (C.D. Cal. 2013) .............................29

*Crown, Cork & Seal Co., Inc. v. Parker*,
  462 U.S. 345 (1983).....................................................22, 23

*DeFries v. Union Pac. R.R. Co.*,
  2022 WL 18936061 (D. Or. Nov. 23, 2022) .......................20

*DeGeer v. Union Pac. R.R. Co.*,
  2023 WL 4535197 (D. Neb. June 21, 2023) .......................20

Appellate Case: 23-2625    Page: 5    Date Filed: 11/21/2023 Entry ID: 5337848

*Dilts v. Penske Logistics, LLC*,
    2009 WL 3425314 (S.D. Cal. Oct. 23, 2009) ....................................................18

*Ganousis v. E.I. du Pont de Nemours & Co.*,
    803 F. Supp. 149 (N.D. Ill. 1992) ............................................................1, 25, 26

*Harris v. Union Pac. R.R. Co.*,
    329 F.R.D. 616 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir.
    2020) ........................................................................................................*passim*

*Henderson v. Ford Motor Co.*,
    403 F.3d 1026 (8th Cir. 2005) ...............................................................14

*In re Indep. Serv. Organizations Antitrust Litig.*,
    1997 WL 161940 (D. Kan. Mar. 12, 1997) ........................................28

*In re Microsoft Corp. Antitrust Litig.*,
    2005 WL 906364 (D. Md. Apr. 18, 2005) ..........................................28

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
    293 F.R.D. 483 (S.D.N.Y. 2013) ........................................................28

*Owen v. Union Pacific Railroad Co.*,
    2020 WL 6684504 (D. Neb. Nov. 12, 2020), *appeal dismissed*,
    2021 WL 1977771 (8th Cir. Feb. 24, 2021) ....................................9, 20

*Potter v. Comm'r of Soc. Sec.*,
    9 F.4th 369 (6th Cir. 2021) ..................................................................24

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
    821 F.3d 992 (8th Cir. 2016) ...............................................................18

*Sawtell v. E.I. du Pont de Nemours & Co.*,
    22 F.3d 248 (10th Cir. 1994) ......................................................*passim*

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
    642 F.3d 560 (7th Cir. 2011) ...............................................................25

*Smith v. Pennington*,
    352 F.3d 884 (4th Cir. 2003) ..........................................1, 27, 28, 29

*Stone Container Corp. v. United States*,
    229 F.3d 1345 (Fed. Cir. 2000) ..........................................................25

v

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) ...................................................................27

*Tosti v. City of Los Angeles*,
  754 F.2d 1485 (9th Cir. 1985) ..........................................................23, 24

*Weitzner v. Sanofi Pasteur Inc.*,
  909 F.3d 604 (3d Cir. 2018) ...............................................................23

*In re Worldcom Sec. Litig.*,
  496 F.3d 245 (2d Cir. 2007) ...............................................................30

*Zaragoza v. Union Pac. R.R. Co.*,
  2023 WL 2062471 (W.D. Tex. Feb. 17, 2023) ......................................20

**Statutes**

42 U.S.C. §§ 2000e-5, 12117(a) ...............................................................14

Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* .......................2

**Other Authorities**

49 C.F.R. § 242.1(a)...................................................................................3

49 C.F.R. § 242.117 .................................................................................3

49 C.F.R. § 242.117(h)(3)..................................................................3, 12, 18

49 C.F.R. § 242.117(j) ........................................................................12, 18

49 C.F.R. § 242.201(c).............................................................................3

49 C.F.R. § Pt. 242, App. D(2) .........................................................4, 12, 18

49 C.F.R. § Pt. 242, App. D(4) .........................................................4, 12, 18

Fed. R. App. P. 32(a)(7)(B) ...................................................................31

Appellate Case: 23-2625     Page: 7     Date Filed: 11/21/2023 Entry ID: 5337848

# STATEMENT OF THE ISSUE

1.      The District Court properly granted Union Pacific's motion for judgment on the pleadings because the pleaded allegations and judicially noticeable materials confirm that DeGeer was excluded from the voluntarily revised class definition in *Harris*, which exclusion ceased equitable tolling of the statute of limitations under *American Pipe* and its progeny.

Most Apposite Cases

A.      *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

B.      *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248 (10th Cir. 1994).

C.      *Smith v. Pennington*, 352 F.3d 884 (4th Cir. 2003).

D.      *Ganousis v. E.I. du Pont de Nemours & Co.*, 803 F. Supp. 149 (N.D. Ill. 1992).

Appellate Case: 23-2625     Page: 8     Date Filed: 11/21/2023 Entry ID: 5337848

## STATEMENT OF THE CASE

## I.   PROCEDURAL HISTORY

This is an appeal from the decision of the Honorable Robert F. Rossiter, Jr., Chief United States District Judge for the District of Nebraska.  The nature of this case is one for claimed damages and equitable relief, based on multiple alleged violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*  DeGeer's Complaint contains two counts for "disability discrimination" and one for declaratory judgment.

Shortly after Union Pacific filed its answer, DeGeer moved for partial summary judgment on Union Pacific's statute of limitations defense.  Union Pacific opposed DeGeer's partial summary judgment motion and separately moved for judgment on the pleadings.  Union Pacific's motion was based both on its affirmative defense of statute of limitations and also on the assertion that DeGeer's claims fail on the merits.  After receiving the parties' evidence and briefs, the District Court denied DeGeer's motion, granted Union Pacific's motion on its statute of limitations defense, and entered final Judgment in favor of Union Pacific.  DeGeer has appealed the Court's order denying DeGeer's motion and granting Union Pacific's motion. DeGeer further appeals the Court's entry of judgment in this action.

Appellate Case: 23-2625    Page: 9    Date Filed: 11/21/2023 Entry ID: 5337848

## II. **STATEMENT OF FACTS AND PLEADED ALLEGATIONS**

The facts and pleaded allegations recited below were set forth to the District Court, in the operative Complaint and in various public records of which Union Pacific requested that the District Court take judicial notice.

### A. **DeGeer's Tenure as a Conductor for Union Pacific.**

Union Pacific hired DeGeer in 1978, and most recently, he worked for Union Pacific as a Conductor. [App. 5 (¶¶ 16-17); R. Doc. 1, at 5] As a conductor, part of DeGeer's job entailed reading and interpreting multicolored railroad traffic signal lights on signal masts. [App. 5 (¶ 18); R. Doc. 1, at 5] And, as a conductor, DeGeer was required to be certified by the FRA. [App. 1-2 (¶ 2); R. Doc. 1, at 1-2]

### B. **The Applicable FRA Safety Regulations.**

The FRA has regulations that govern railroad conductors, and all conductors must meet its regulatory color vision standards to be certified to hold the position. 49 C.F.R. §§ 242.1(a), 242.117. The purpose of these regulations is to ensure that only those persons who meet minimum federal safety standards serve as conductors, to reduce the rate and number of train accidents and incidents and to improve railroad safety. 49 C.F.R. § 242.1(a). Every three years, conductors must be certified by demonstrating the "ability to recognize and distinguish between the colors of railroad signals … by successfully completing one of the tests" described in the regulations. 49 C.F.R. §§ 242.117(h)(3), 242.201(c). The Ishihara (14 plate) examination is identified by the FRA as one such acceptable testing method. 49

3

C.F.R. § Pt. 242, App. D(2).

If an examinee fails the initial Ishihara test, that conductor "may be further evaluated as determined by the railroad's medical examiner." 49 C.F.R. § Pt. 242, App. D(4). Such further evaluation can include "another approved scientific screening test or a field test." *Id.* For all conductors that fail the Ishihara tests as the initial regulatory exam, Union Pacific utilizes a color vision field test ("CVFT") as this secondary evaluation. [App. 2, 5 (¶¶ 3, 13); R. Doc. 1, at 2, 5] An examinee has no right to endless tests in unchanged circumstances but "must have at least one opportunity to prove that a hearing or vision test failure does not mean the examinee cannot safely perform as a conductor." 49 C.F.R. § Pt. 242, App. D(4).

## C. **DeGeer's 2017 Failed Color Vision Examinations.**

In June 2017, Union Pacific required DeGeer to undergo a routine FRA certification, including the regulatory applicable color vision testing. [App. 6 (¶ 20); R. Doc. 1, at 6; App. 162 (¶ 5); R. Doc. 17-3, at 2] Per that routine FRA certification process, DeGeer took and failed the Ishihara (14 plate) test. [App. 6 (¶ 20); R. Doc. 1, at 6; App. 162 (¶ 5); R. Doc. 17-3, at 2] Because he failed the Ishihara (14 plate) test, the FRA certification process continued, and DeGeer then took and failed Union Pacific's CVFT, pursuant to 49 C.F.R. § Pt. 242, App. D(4). [App. 5 (¶ 13); R. Doc. 1, at 5; App. 6 (¶ 20); R. Doc. 1, at 6] Because DeGeer did not pass the FRA's regulatory certification requirements, Union Pacific – in June 2017 – imposed work

4

restrictions that prohibited DeGeer from performing work that necessitated the accurate identification of colored railroad wayside signals. [App. 6 (¶ 21); R. Doc. 1, at 6; App. 162 (¶ 6); R. Doc. 17-3, at 2]

### D.   The *Harris* Class Action.

1.   *The Operative* Harris *Complaint*.

In February 2016, six named plaintiffs[1] filed a class action lawsuit against Union Pacific, alleging class claims of disparate treatment, disparate impact, and unlawful medical inquiry under the ADA. [App. 6 (¶ 23); R. Doc. 1, at 6; App. 73-116; R. Doc. 17-1, at 1-116]  This *Harris* pleading proposed a class defined as:

> Individuals who were removed from service over their objection, and/or suffered another adverse employment action, during their employment with Union Pacific for reasons related to a Fitness-for-Duty evaluation at any time from 300 days before the earliest date that a named Plaintiff filed an administrative charge of discrimination to the resolution of this action.

[App. 89 (¶ 116); R. Doc. 17-1, at 18]

---

[1] DeGeer was not a named *Harris* plaintiff. [App. 73-116; R. Doc. 17-1, at 1-116] The attorneys representing the named *Harris* plaintiffs, however, were also representing DeGeer during the *Harris* litigation. [App. 602-613; R. Doc. 17-16, at 1-12]

5

In turn, the allegations of and attachments to the *Harris* complaint explained that Union Pacific's fitness-for-duty examinations may be initiated for a number of different reasons, explicitly including – among other grounds – regulatory medical evaluations administered to all Union Pacific locomotive engineers and conductors. [App. 76 (*Harris* First Amended Complaint, reference to Medical Rules); R. Doc. 17-1, at 5; App. 108-110 (Medical Rules re Fitness-For-Duty Evaluations); R. Doc. 17-1, at 37-39]

2.    *Union Pacific Never Produced a Class List in* Harris.

During the course of discovery in *Harris*, the plaintiffs requested the identification of all Union Pacific employees who had been subject to a fitness-for-duty evaluation since January 1, 2014; and in response, Union Pacific objected to the request as overly broad. [App. 515-516; R. Doc. 17-7, at 15-16]  Nonetheless, from April 2017 to February 2018, Union Pacific produced three successive spreadsheets of names of employees, in an attempt to respond to this same overly broad interrogatory. [App. 192-195; R. Doc. 17-13, at 14-17]  However, as repeatedly explained to counsel (both for the *Harris* plaintiffs and for DeGeer), Union Pacific had no reasonable means by which to identify the specific reasons for the initiation of a Fitness-for-Duty process for every employee or former employee who had been subject to an FFD evaluation. [App. 582-583; R. Doc. 17-7, at 82-83]

6

Thus, the spreadsheets were not – and could not have been – specifically tailored to the class definition, or to any party's understanding of that definition.

In light of the foregoing, Union Pacific explicitly confirmed in its formal discovery responses that the three spreadsheets it produced in discovery were not intended to be *Harris* class lists. [App. 191-194 (Footnotes 1-4); R. Doc. 17-13, at 13-16]  Likewise, Union Pacific expressly stated in communications with counsel that the search methods employed to identify those named on the lists were necessarily both over-inclusive and under-inclusive, and therefore, the results of those searches were never intended to be putative class lists. [App. 600-601; R. Doc. 17-11, at 2-3]  The parties and their attorneys fully understood that the spreadsheets provided during discovery did not constitute lists of putative class members.

Moreover, class counsel – again, who simultaneously represented DeGeer individually – initially incorrectly asserted in *Harris* that Union Pacific produced a "class list" on which their clients' names appeared, but subsequently conceded to Magistrate Judge Bazis of the District of Nebraska:

> Defendant has been careful to formally deny that the list in question constitutes a putative class list.  My letter was inaccurate in so far as it stated that Defendant's counsel believed the list in question was a putative class list.

Appellate Case: 23-2625     Page: 14     Date Filed: 11/21/2023 Entry ID: 5337848

[App. 618; R. Doc. 31-4, at 2]  This May 2018 concession and correction of the record was made in direct response to Union Pacific specifically identifying what it presumed to be the attorney's inadvertent statement and the multiple bases for that statement's inaccuracy. [App. 614; R. Doc. 31-3, at 1][2, 3]

And, in a separate case, the District of Nebraska later rejected – in no uncertain terms – the very same argument in 2020:

> [Plaintiff] Owen alternatively argues Union Pacific should
> be judicially estopped from relying on the statute of
> limitation because Union Pacific "identified Owen as a

---

[2] Both the letter (App. 618; R. Doc. 31-4, at 2) and the email exchange (App. 614-616; R. Doc. 31-3, at 1-3) were also delivered to James Kaster, another attorney of record for DeGeer in this case.

[3] Two weeks later, on May 25, 2018, Union Pacific again noted for the Court in *Harris* that the plaintiffs had yet to proffer a viable class definition, while simultaneously repeating its position that employees pulled from service due to failing a CVFT fell *outside* the scope of the class action. [App. 620-637; R. Doc. 42-2, at 1-19]  Union Pacific's May 2018 brief left no room for doubt or confusion:

> Plaintiffs have argued that the class list should include all
> persons with vision or hearing changes even if those vision
> or hearing changes were not considered Reportable Health
> Events by Union Pacific. This interpretation of the class
> definition could arguably include anyone who was pulled
> from service temporarily for a regulatory vision or hearing
> exam—a total of more than 191,000 employees. Even if
> Plaintiffs were looking to include only those who had
> deferred exams, we do not believe such employees would
> be appropriately included in the class.

[App. 625-626; R. Doc. 42-2, at 7-8]

putative-class member in *Harris*" and "Owen did not file his charge within 300 days of the adverse action because Union Pacific represented to him that he was a putative-class member." In a Notice of Correction (Filing No. 46) to the Court, **Owen's counsel walks that back quite a bit, reluctantly admitting – at Union Pacific's prompting – that Union Pacific has been careful over the course of litigation not to specifically identify Owen as putative class member.** Contrary to Owen's counsel's bald assertion that the "distinction does not affect [his] arguments," the correction actually guts Owen's estoppel and reliance arguments.

*Owen v. Union Pacific Railroad Co.*, 2020 WL 6684504, at *5 fn. 2 (D. Neb. Nov. 12, 2020), *appeal dismissed*, 2021 WL 1977771 (8th Cir. Feb. 24, 2021) (emphasis added).

      3.    *The* Harris *Motion for Class Certification.*

On August 17, 2018, the *Harris* plaintiffs moved for class certification, solely on the disparate treatment claim: "Here, Plaintiffs seek certification of Count I, ADA disparate treatment, of the Amended Complaint…." [App. 139; R. Doc. 17-2, at 23]

The August 2018 *Harris* certification motion further focused the scope of the

one remaining class claim by changing the operative class definition:

> All individuals who have been or will be subject to a
> fitness-for-duty examination as a result of a reportable
> health event at any time from September 18, 2014 until the
> final resolution of this action.

[App. 139; R. Doc. 17-2, at 23]  Indeed, the motion itself expressly acknowledged that the *Harris* plaintiffs had narrowed the definition from that previously asserted in the operative complaint. [App. 139 (fn. 5); R. Doc. 17-2, at 23]  At no point prior to the August 2018 motion had the *Harris* plaintiffs proposed an amended class definition or conceded that Union Pacific's objections to the over-breadth of the previously pleaded definition were well-taken.

Moreover, the revised class definition's inclusion of the "as a result of a reportable health event" qualification carried specific limitations, known to all parties.  As it relates to color vision, Union Pacific's Medical Rules – already incorporated into the *Harris* complaint by reference and attachment – define a "Reportable Health Event" as follows:

> Reportable health event is defined as a new diagnosis,
> recent event, or change in a prior stable condition, for …
> significant vision change in one or both eyes affecting ...
> color vision.

[App. 116; R. Doc. 17-1, at 45]

On February 5, 2019, the District Court certified the *Harris* class, and the District Court's order adopted verbatim the revised class definition proffered in the *Harris* plaintiffs' August 2018 motion. *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb. 2019), *rev'd*, 953 F.3d 1030 (8th Cir. 2020) ("The Court certifies the class to consist of: All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action."). In March 2020, the Eighth Circuit Court of Appeals reversed the District Court's certification decision. [App. 6 (¶ 24); R. Doc. 1, at 6]

### E.   DeGeer Did Not Experience a Reportable Health Event.

When DeGeer underwent his color vision testing in June 2017, he was not subject to that color vision evaluation because of a new color vision diagnosis, a recent event related to significant vision change, or any other significant change in his color vision. [App. 116; R. Doc. 17-1, at 45]   Rather, by DeGeer's own admission:

> On or about June 2017, Union Pacific required me to undergo a fitness for duty evaluation as part of my routine FRA recertification.

[App. 162 (¶ 5); R. Doc. 17-3, at 46]  Union Pacific subjected DeGeer to the 2017

11

color vision examinations because federal regulations required it to do so. 49 C.F.R. §§ 242.117(h)(3), 242.117(j); 49 C.F.R. §§ Pt. 242, App. D(2), Pt. 242, App. D(4).

Likewise, DeGeer's failed Ishihara test in June 2017 did not result in a new diagnosis or reveal any significant change in his color vision. To the contrary, DeGeer had longstanding color vision deficiency, with which he had worked for many years. [App. 161 (¶¶ 3-4); R. Doc. 17-3, at 45] Indeed, he had previously failed his regulatory Ishihara color vision test, only three years earlier. [App. 5-6 (¶ 19); R. Doc. 1, at 5-6]

At no point in 2017 did DeGeer receive a new color vision diagnosis, and he did not experience a significant change in his color vision. [App. 116 (Medical Rules re Reportable Health Event); R. Doc. 17-1, at 45] DeGeer did not experience a Reportable Health Event. And, because DeGeer did not experience a Reportable Health Event, he was not subjected to a Fitness-for-Duty examination as a result of a Reportable Health Event. Rather, "[o]n or about June 2017, Union Pacific required [DeGeer] to undergo a fitness for duty evaluation as part of [his] routine FRA recertification." [App. 162 (¶ 5); R. Doc. 17-3, at 46]

### F.   DeGeer Filed His EEOC Charge in 2020.

DeGeer filed his EEOC charge of discrimination on May 1, 2020. [App. 483; R. Doc. 51, at 6; App. 494; R. Doc. 17-4, at 2; App. 498-499; R. Doc. 17-5, at 2-3]

12

# SUMMARY OF THE ARGUMENT

DeGeer's claims are time-barred because any applicable *American Pipe* tolling ceased in August 2018, when his own attorneys voluntarily narrowed the *Harris* class definition to exclude DeGeer as a putative class member. Like all railroad conductors, DeGeer was subjected to triennial color vision examinations, as required by federal regulations. Because the undisputed facts – indeed, DeGeer's own sworn declaration – confirm that Union Pacific did not subject DeGeer to a fitness for duty examination as a result of a Reportable Health Event, he did not fall within the revised class definition asserted in the *Harris* plaintiffs' motion for class certification. Accordingly, as of August 17, 2018, DeGeer's claims under the ADA were no longer tolled under *American Pipe*, and he was required to file his EEOC charge by June 2019. DeGeer filed his charge in May 2020, and thus, the District Court correctly dismissed his time-barred claims for relief.

## ARGUMENT – DEGEER'S CLAIMS ARE TIME-BARRED

The parties to this action do not dispute a majority the pertinent facts underlying Appellant's failure to exhaust timely his administrative remedies. In particular, Union Pacific removed DeGeer from service in June of 2017, which means that – absent tolling – his deadline to file an EEOC charge of discrimination expired in April 2018. 42 U.S.C. §§ 2000e-5, 12117(a); *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005) ("Under the ADA, an employee must file

13

a charge of discrimination … within 300 days of the alleged discrimination.").  Thus, the question presented in the instant appeal is whether equitable tolling under *American Pipe* and its progeny saved DeGeer's untimely May 2020 administrative filing.  The District Court correctly determined that it did not.

## I.  DEGEER WAS NOT A *HARRIS* PUTATIVE CLASS MEMBER

### A.  The Unambiguous Operative Class Definition.

On August 17, 2018, the *Harris* plaintiffs moved for class certification, proffering a revised class definition that was more limited in scope than had previously been pleaded. [App. 89 (¶ 116); R. Doc. 17-1, at 18]  In their motion, the *Harris* plaintiffs, for the first time, proposed the following class:

> All individuals who have been or will be subject to a
> fitness-for-duty examination as a result of a reportable
> health event at any time from September 18, 2014 until the
> final resolution of this action.

[App. 139; R. Doc. 17-2, at 23]  Thus, to fall within this unilaterally updated definition, putative class members were required to have experienced a "Reportable Health Event," a specifically defined term within Union Pacific's Medical Rules:

> Reportable health event is defined as a new diagnosis,
> recent event, or change in a prior stable condition, for …

14

> significant vision change in one or both eyes affecting ...
>
> color vision.

[App. 116; R. Doc. 17-1, at 45]  And *if* an individual experienced the requisite "Reportable Health Event," that "Reportable Health Event" must have then triggered a fitness-for-duty examination.

Contrary to the insistence of the opening brief, understanding the straightforward language of this revised class definition does not require flyspecking technical nuances of the *Harris* plaintiffs' word choice.  The definition speaks for itself and needs no specialized construction to interpret.  Indeed, conspicuously absent from Appellant's brief is any suggestion of some alternative interpretation of the plain meaning of the narrowed *Harris* definition.

## B. The *Harris* Class Definition Excluded DeGeer.

Even at the early pleadings stage of this litigation, Appellant's own indisputable evidence submitted to the District Court confirms that DeGeer did not experience a Reportable Health Event.

- His failure of the Ishihara test in 2017 was not a new diagnosis of significant vision change.  To the contrary, he had failed the same Ishihara exam three years earlier, and no one rendered any diagnosis – let alone a new one – as a result of DeGeer's failed 2017 Ishihara examination. [App. 5-6 (¶¶ 19-20); R. Doc. 1, at 5-6]

15

- His failure of the Ishihara test in 2017 was not a recent event of significant vision change. Again, in 2014, DeGeer had taken and failed the same Ishihara test; the results of DeGeer's 2017 Ishihara exam did not reflect a change in his vision. It was *consistent* with his prior Ishihara test. [App. 5-6 (¶¶ 19-20); R. Doc. 1, at 5-6]

- His failure of the Ishihara test did not represent a significant change in a prior stable condition related to his color vision. It was no change at all, as DeGeer himself confirmed that he had worked with his same color vision deficiency for many years. [App. 161 (¶ 4); R. Doc. 17-3, at 45]

In short, the pleaded allegations and undisputed evidence presented to the District Court confirmed that DeGeer did not experience a "significant vision change in one or both eyes affecting [his] color vision." [App. 116; R. Doc. 17-1, at 45] And, without a significant change to his vision, he did not experience a Reportable Health Event and was not subjected to a fitness for duty examination as a result of a Reportable Health Event.

Notwithstanding his reliance on partial quotations and unsubstantiated implication[4], "DeGeer's post hoc attempts to recharacterize the impetus for his failed

---

[4] "After all, one of the 'conditions' that Union Pacific treated as such a 'reportable health event' was a 'recent event' in 'color vision' acuity-the very problem the Ishihara test was meant to detect." [Appellant's Brief at 31-32] False. Appellant's creative, if not deceptive, use of quotations omits the fact that the referenced "recent

vision tests and subsequent work restrictions are unpersuasive." [App. 488; R. Doc. 51, at 11] In particular, DeGeer expends much energy attempting to recast his 2017 failure of the Ishihara as a "recent event," but in so doing, he ignores the full definition requiring that any such "recent event" must have been one for "*significant vision change*." [App. 116; R. Doc. 17-1, at 45] It is telling that the complete definition of a Reportable Health Event appears *nowhere* within the opening brief. And for good reasons: (a) DeGeer did not experience a significant change in his vision; (b) he therefore did not experience a Reportable Health Event; and (c) he was subjected to the 2017 color vision FFD evaluation as a result of the triennial regulatory certification process.

Furthermore, DeGeer's attempts to castigate the District Court's reliance upon Appellant's sworn declaration are misplaced. First, although it may be possible that a conductor's failure of an Ishihara test during the recertification process could reveal a significant change in that hypothetical conductor's vision, that did not occur with DeGeer. In 2017, DeGeer was already aware of his color vision deficiency, and so was Union Pacific. He had failed the Ishihara test three years prior [App. 5-6 (¶ 19); R. Doc. 1, at 5-6], and his vision had not changed [App. 161 ¶¶ 3-4; R. Doc. 17-3, at 45]. Second, the only reason that he was subjected to the color vision testing

_____

event" must be one for "*significant vision change* in one or both eyes affecting … color vision." [App. 116; R. Doc. 17-1, at 45]

17

protocol was because that is what the FRA's safety regulations required for conductor recertification (49 C.F.R. §§ 242.117(h)(3), 242.117(j); 49 C.F.R. §§ Pt. 242, App. D(2), Pt. 242, App. D(4)) – precisely, as DeGeer declared under oath. [App. 162 (¶ 5); 17-3, at 46]

### C.   Counsel's Misunderstanding of the Class Definition Is Immaterial.

Whether DeGeer's counsel intended to exclude him from the *Harris* class is of no moment, and whether DeGeer's attorneys incorrectly labeled him a putative class member after August 2018 is likewise irrelevant.   The determination of whether DeGeer was a member of the putative class is governed by the class definition itself, not an after-the-fact reimagining of what that definition should have been.   *See gen'ly Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) ("Rather, this court adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class must be adequately defined and clearly ascertainable."); *Dilts v. Penske Logistics, LLC*, 2009 WL 3425314, at *2 (S.D. Cal. Oct. 23, 2009) (denying certification because the proffered class definitions were inadequate, irrespective of counsel's intentions).

### D.   Union Pacific Never Produced a Class List in *Harris*.

Time and again, the Opening Brief references a purported class list produced in the discovery phase of the *Harris* litigation, but Appellant's relentless repetition of this false narrative does not make it so.   To the contrary, and as outlined above

18

(Statement of the Case, Section II.D.2., *supra*), Union Pacific was exceedingly deliberate in its communications and discovery responses that the spreadsheets it produced in *Harris* were neither intended to be class lists nor could they be fairly characterized as such. Rather, those spreadsheets were both over-inclusive and under-inclusive in relation to the then-operative class definition and the overly broad interrogatories to which the spreadsheets attempted to respond. Moreover, those spreadsheets pre-dated the revised and narrowed class definition that was first introduced by the *Harris* plaintiffs in their August 2018 motion for certification. And, counsel – for the *Harris* plaintiffs and DeGeer – has always known this to be true.

Notwithstanding the indisputable evidence, the Opening Brief presents falsehoods as accepted facts, repeatedly asserting that Union Pacific produced a class list and that all parties knew DeGeer to be a putative class member. [Appellant's Brief at 2, 12, 13, 21, 31, 36, 39] Moreover Appellant's self-serving and fictional narrative cannot be attributed to a misunderstanding of the facts or a mistaken interpretation of record. Rather, it is a conscious election and effort to mislead this Court, as Union Pacific has repeatedly been forced to correct these same misstatements by the same attorneys on multiple occasions in multiple venues. [App. 614-616; R. Doc. 31-3, at 1-3; App. 617-618; R. Doc. 31-4, at 1-2; App. 619-637; R. Doc. 42-2, at 1-19]; *Owen*, *supra*, 2020 WL 6684504, at *5 fn. 2; *Blankinship v.*

19

*Union Pac. R.R. Co.*, 2022 WL 16715467, at *6 (D. Ariz. Nov. 4, 2022) ("However, Defendant reiterates that this list was meant to be overinclusive, the parties jointly understood the list was not the intended operative class list, and most importantly, the list was created before the *Harris* plaintiffs narrowed the operative class list when moving for certification on August 17, 2018."); *DeFries v. Union Pac. R.R. Co.*, 2022 WL 18936061, at *6 (D. Or. Nov. 23, 2022), *report and recommendation adopted*, 2023 WL 1777635 (D. Or. Feb. 6, 2023) ("The Court agrees that Union Pacific's list of potential class members, generated prior to the *Harris* plaintiffs' narrowing of the class, is not dispositive of DeFries's membership in the class the *Harris* plaintiffs moved to certify. On the contrary, the narrowed definition of the *Harris* class clearly excludes DeFries."); *Zaragoza v. Union Pac. R.R. Co.*, 2023 WL 2062471, at *6 (W.D. Tex. Feb. 17, 2023) (noting that "Union Pacific consistently denied that the list accurately represented the size and scope of the class"); *DeGeer v. Union Pac. R.R. Co.*, 2023 WL 4535197, at *6 (D. Neb. June 21, 2023) ("The Court is satisfied that UP has been sufficiently clear under the circumstances about its position on the scope of the certified class and that UP did not concede that anyone listed on the spreadsheets it provided was part of any putative class.")] Enough is enough; Appellant's tactics should not be tolerated.

## II. *AMERICAN PIPE* TOLLING CEASED WHEN DᴇGEER'S COUNSEL EXCLUDED DᴇGEER FROM THE *HARRIS* CLASS.

On August 18, 2018, the *Harris* class counsel – who simultaneously represented DeGeer – moved for certification and proffered a revised definition, narrower than that originally pleaded. Because this August 2018 class definition excluded DeGeer from the putative class, *American Pipe* tolling ended, and DeGeer had 300 days to file an administrative charge with the EEOC. He failed to do so, and the District Court correctly ruled that his claims are now time-barred.

### A. Equitable Tolling under *American Pipe*.

In *American Pipe*, the Supreme Court held, under the posture of that case, that "at least where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impractical,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 552-53 (1974). There was no dispute that the parties, whose motions to intervene were denied as untimely under the limitations period, were "claimed as members" of the class to which the district court denied certification. *Id.* at 542-44. The Court set forth a general rule that "the commencement of a class action suspends the applicable statute of limitations as to

21

all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554.

In *Crown, Cork & Seal*, the Court elaborated that tolling also applied to class members who "choose to file their own suits" after denial of class certification. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353-54 (1983). Like *American Pipe*, there was no dispute that the plaintiff who chose to file his own lawsuit after denial of class certification was a "member of the asserted class." *Id.* at 347-48.

**B.** *American Pipe* **Tolling Ceases for Reasons Other Than Denial of Class Certification.**

Here, Appellant advances the proposition that *American Pipe* set forth a straightforward and unbending rule that the filing of a class action tolls the statute of limitations for putative class members, unless and until class certification is denied. [Appellant's Brief 24-25, 28] DeGeer's adherence to such an inflexible reading of *American Pipe*, however, ignores decades of subsequent case-law interpreting and refining *American Pipe*. Indeed, the Supreme Court has since clarified that *American Pipe* tolling is equitable in nature, "designed to modify a statutory time bar where its rigid application would create injustice." *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* 582 U.S. 497, 509-10 (2017). "Plaintiffs have no substantive right to bring their claims outside of the statute of limitations. That they may do so, in limited circumstances, is due to a judicially crafted tolling

22

rule that itself does not abridge, enlarge, or modify any substantive right." *China Agritech, Inc. v. Resh,* 138 S.Ct. 1800, 1810 (2018); *see also ANZ Sec.,* 582 U.S. at 509 ("Nothing in the *American Pipe* opinion suggests that the tolling rule it created was mandated by the text of a statute or federal rule. Nor could it have."). Accordingly, *American Pipe* tolling "need not be applied mechanically," and "it should not be applied where doing so would result in an abuse of *American Pipe*." *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 609 (3d Cir. 2018).

Moreover, "*American Pipe* was decided in 1974, at a time when courts were still gaining familiarity with the modern class action." *Id.* at 609 n.7. And "the facts in both *Crown, Cork & Seal* and *American Pipe* involved decertification of the underlying class action[.]" *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985). Stated differently, neither *American Pipe* nor *Crown, Cork & Seal* addressed atypical procedural scenarios in which individuals, who may have been putative members of the originally pleaded class, were later excluded from participation in the class action by some mechanism other than denial of class certification – e.g., an individual election to opt out of the class, the dismissal of the class action, the named plaintiff's voluntary abandonment of the class action, or the voluntary narrowing of the class definition.

And courts have repeatedly recognized such scenarios for which tolling should end, notwithstanding that they did not involve denying class certification.

23

For example, both the Eighth Circuit and the Ninth Circuit have recognized that a party's decision to opt out of a putative class ceases *American Pipe* tolling. *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718 (8th Cir. 1993) (recognizing that tolling was dependent upon the alleged class member's right to participate in the class action and noting that whether the ending of such participation was by a decision to opt out or the denial of certification is irrelevant); *Tosti*, 754 F.2d at 1488 (holding that tolling ends "from the date when the class member exercises the right to opt out"). Indeed, Appellant concedes the point (albeit in passing, Appellant's Brief, 1 and 3), despite this concession's inherent conflict with DeGeer's unyielding allegiance to the denial of class certification as the lone death knell for *American Pipe* tolling in any given case.

Similarly, the Sixth Circuit, Seventh Circuit, and Federal Circuit have concluded that the dismissal of a class action before certification stops *American Pipe* tolling. *Collins v. Vill. of Palatine*, 875 F.3d 839, 844 (7th Cir. 2017) ("Tolling stops immediately when a class-action suit is dismissed—with or without prejudice—before the class is certified."); *Potter v. Comm'r of Soc. Sec.*, 9 F.4th 369, 381 (6th Cir. 2021) ("[O]nce an uncertified class action is dismissed, *American Pipe* tolling ceases, and the class members' individual statute-of-limitations clocks begin running…."); *Stone Container Corp. v. United States*, 229 F.3d 1345, 1355 (Fed. Cir. 2000) ("[T]olling ends with the district court's dismissal of the class

action."). The Seventh Circuit has also held that a class representative's abandonment of class claims likewise ceases the application of equitable tolling. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 563 (7th Cir. 2011) ("The rationale of *American Pipe* does not permit a distinction among situations in which the putative class representative gives up before, or after, the judge decides whether the case may proceed on behalf of a class.")

And, as addressed in the subsection that follows, courts have long held that *American Pipe* tolling ends for putative class members who do not fall within a revised class definition.

### C. *American Pipe* Tolling Ceases When a Certification Motion Narrows the Class Definition to Exclude a Putative Class Member.

For more than three decades, courts have repeatedly addressed the scenario at issue here – i.e., *American Pipe* tolling ceases for putative class members who are excluded from an amended and narrowed class definition.

In *Ganousis v. E.I. du Pont de Nemours & Co.*, 803 F. Supp. 149, 157 (N.D. Ill. 1992), the District Court addressed – as an issue of first impression – the very question presented in this case and concluded that *American Pipe* tolling ended once the class definition was narrowed by the class plaintiff's certification motion. In that case, prior class counsel – who also represented the two plaintiffs in the individual action – chose to narrow an alleged nationwide class to include only Minnesota residents. *Id.* at 155. The plaintiffs in the subsequent individual action had been

25

putative class members under the originally pleaded definition (*Id.* at 152, fn. 4), but that certification motion excluded those same individuals because they were residents of Illinois (*Id.* at 155). "At that point both of the present plaintiffs were placed on legal notice that they could not look to the pending Minnesota actions to protect their interests and that they would therefore have to go it alone by bringing their own lawsuits." *Id*. at 155–56.

The Tenth Circuit has similarly long held that, when plaintiffs move for class certification utilizing a narrower definition than that asserted in their complaint, only the newly proposed class continues to be subject to *American Pipe* tolling. In *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248 (10th Cir. 1994), the three underlying class action complaints had initially pleaded an expansive class, composed of persons who received particular surgical implants. *Id.* at 253, fn. 10. In their motion for certification, the class plaintiffs then narrowed that definition, limiting the proposed class only to those who had received implants in Minnesota. *Id.* at 253. The plaintiff in *Sawtell*, however, was a resident of New Mexico and had her operations performed in New Mexico. *Id.* Thus, although the plaintiff was a member of the class as originally pleaded in the underlying complaints, she was *not* a member of the revised class as defined in the subsequent certification motion. And the Tenth Circuit reasoned that this was dispositive:

26

> The Supreme Court held the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. Ms. Sawtell would not have been a party to the Minnesota suits had any of them continued as a class action. The statute of limitations should not be tolled.

*Id.* at 253–54 (internal quotations and citations omitted).

Following *Sawtell*, the Ninth Circuit rejected the argument "that the commencement of a class action suit satisfies the statute of limitations for all those who might subsequently participate in the suit[.]" *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935-36 (9th Cir. 1996). In doing so, it approvingly cited *Sawtell* for the proposition that "[t]he equitable tolling doctrine only tolls the statute of limitations for asserted class members." *Id.* at 936. Consequently, the Ninth Circuit concluded that, because the proposed plaintiffs were not "asserted class members," their claims extending the class period were time-barred. *Id.*

The Fourth Circuit in *Smith v. Pennington* reached the same conclusion under similar circumstances:

> We believe that the *Sawtell* court employed the correct rule, and conclude that when a plaintiff moves for class

27

certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition. It then follows that **_for parties outside that asserted class, tolling will be unavailable_** at least until such time as the plaintiff repudiates that definition of the class he seeks to have certified in a manner that provides adequate notice that his class definition has changed.

*Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003) (emphasis added); see also *In re Indep. Serv. Organizations Antitrust Litig.*, 1997 WL 161940, at *3 (D. Kan. Mar. 12, 1997) ("Tolling of the individual's claims continues until either the putative class is narrowed so as to exclude the individual from the class, the individual opts out of the class, or class certification is denied."); *In re Microsoft Corp. Antitrust Litig.*, 2005 WL 906364, at *4 (D. Md. Apr. 18, 2005) (concluding that *American Pipe* tolling ceased when the certification motion in the underlying class action narrowed the applicable class definition to exclude certain putative class members); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 293 F.R.D. 483, 487 (S.D.N.Y. 2013) ("[W]hen a consolidated class action complaint redefines a class more narrowly than the prior individual complaints, and no longer asserts claims on behalf

28

of a portion of the consolidated class, the statute of limitations is no longer tolled under *American Pipe* for that 'abandoned' subclass."); *Amalgamated Transit Union Loc. 1309 v. Laidlaw Transit Servs., Inc.*, 2010 WL 582134, at *8 (S.D. Cal. Feb. 11, 2010) (citing *Smith* and *Sawtell* for principle that tolling limited to narrower class definition asserted in motion for class certification); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp. 2d 1219, 1232 (C.D. Cal. 2013) (citing and quoting *Smith* in context of judicial admissions determining scope of class for tolling purposes).

Here, as demonstrated above (Statement of the Case, Section II.E., *supra*), DeGeer did not experience a Reportable Health Event, and thus, he was not subjected to a fitness for duty evaluation as a result of a Reportable Health Event. By his own admission, DeGeer was not a member of the *Harris* putative class as defined by his own counsel in August 2018. At that time, *American Pipe* tolling halted, and DeGeer's statute of limitations began to run. Because he did not file his EEOC charge within 300 days following his August 2018 exclusion from the *Harris* putative class, DeGeer's claims under the ADA are now time-barred.

## III. ALTERNATIVELY, *AMERICAN PIPE* TOLLING CEASES WHEN A CERTIFICATION DECISION NARROWS THE CLASS DEFINITION TO EXCLUDE A PUTATIVE CLASS MEMBER

Each of the authorities above is wholly consistent with and advances the principles espoused in *American Pipe*. Nevertheless, DeGeer's Reply Brief is

29

expected to regurgitate his failed summary judgment argument based on *Choquette v. City of New York*, 839 F. Supp. 2d 692 (S.D.N.Y. 2012). In *Choquette*, the district court declined to follow the rule that the narrowing of a class definition within a motion for certification ends *American Pipe* tolling. Instead, the Southern District of New York reasoned that – under Second Circuit case law – tolling continues until "a plaintiff opts out of the class or a class certification decision of the court definitively excludes that plaintiff." *Choquette*, 839 F. Supp. 2d at 699 (citing *In re Worldcom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007)).

Even under the approach taken in *Choquette*, however, DeGeer's claims remain untimely. In February 2019, the court in *Harris* definitively excluded DeGeer when it accepted the revised *Harris* class definition and certified the more narrowly defined class. *Harris*, 329 F.R.D. at 628 ("The Court certifies the class to consist of: All individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event at any time from September 18, 2014 until the final resolution of this action.").

Whether *American Pipe* tolling ceased when the *Harris* class certification motion was filed in August 2018, or when the *Harris* court adopted the narrowed class definition in February 2019, DeGeer failed to exhaust his administrative remedies within the required 300 days. DeGeer's May 2020 charge was untimely, irrespective of whether tolling ended in August 2018 or February 2019.

30

## CONCLUSION

For these reasons, Union Pacific requests that this Court affirm the District Court's order granting judgment on the pleadings.

Dated this 21st day of November, 2023.

UNION PACIFIC RAILROAD
COMPANY, Appellee-Defendant,

By: /s/ Mark J. Goldsmith
Scott Parrish Moore (NE# 20752)
Mark J. Goldsmith (NE# 26429)
BAIRD HOLM LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102-2068
Phone: 402-344-0500
Email: spmoore@bairdholm.com
Email: mgoldsmith@bairdholm.com

Appellate Case: 23-2625    Page: 38    Date Filed: 11/21/2023 Entry ID: 5337848

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), in that it contains 7,904 words. This brief was created and formatted using MS Word 11.0 and is in 14-point, Times New Roman Font. The brief has been scanned for viruses, and it is virus-free.

/s/ Mark J. Goldsmith

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system sending notification of such filing to the following:

James H. Kaster
kaster@nka.com

Matthew W.H. Wesller
matt@guptawessler.com

Lucas Kaster
lkaster@nka.com

Jessica E. Garland
jessie@guptawessler.com

Jacob C. Harksen
jharksen@nka.com

Linnet Rose Davis-Stermitz
linnet@guptawessler.com

Nadia H. Dahab
nadia@sugermandahab.com

Leah M. Nicholls
LNicholls@publicjustic.net

/s/Mark J. Goldsmith

6217626.11