# In the United States Court of Appeals for the Eighth Circuit

TODD DEGEER,
*Plaintiff-Appellant,*

v.

UNION PACIFIC RAILROAD CO.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Western District of Nebraska - Omaha
No. 8:23-cv-00010-RFR (The Hon. Robert F. Rossiter)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

JAMES H. KASTER
LUCAS J. KASTER
NICHOLS KASTER, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 256-3200

MATTHEW W.H. WESSLER
LINNET R. DAVIS-STERMITZ
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
matt@guptawessler.com

JESSICA GARLAND
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(415) 573-0336

December 20, 2023                    *Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of authorities ................................................................................. ii

Introduction ......................................................................................... 1

Argument .............................................................................................. 2

I.    Mr. DeGeer should not be deprived of *American Pipe* tolling on the ground that the *Harris* class was narrowed. ................................... 2

Conclusion .......................................................................................... 16

i

# TABLE OF AUTHORITIES

## Cases

*Adams Public School District v. Asbestos Corp.*,
  7 F.3d 717 (8th Cir. 1993)......................................................................8

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974).......................................................................2, 4, 8

*California Public Employees' Retirement System v. ANZ Securities, Inc.*,
  582 U.S. 497 (2017) ............................................................................1

*Crown, Cork & Seal Co. v. Parker*,
  462 U.S. 345 (1983) .........................................................................2, 4

*Ganousis v. E.I. du Pont de Nemours & Co.*,
  803 F. Supp. 149 (N.D. Ill. 1992)......................................................7

*Great Plains Trust Co. v. Union Pacific Railroad Co.*,
  492 F.3d 986 (8th Cir. 2007)..............................................................5

*Harris v. Union Pacific Railroad Co.*,
  329 F.R.D. 616 (D. Neb. 2019).................................................*passim*

*In re Independent Service Organizations Antitrust Litigation*,
  1997 WL 161940 (D. Kan. Mar. 12, 1997) ........................................8

*In re Syntex Corp. Securities Litigation*,
  95 F.3d 922 (9th Cir. 1996)................................................................6

*Owen v. Union Pacific Railroad Co.*,
  2020 WL 6684504 (D. Neb. Nov. 12, 2020) ...................................11

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*,
  821 F.3d 992 (8th Cir. 2016)............................................................12

*Sawtell v. E.I. du Pont de Nemours & Co.*,
  22 F.3d 248 (10th Cir. 1994) .........................................................5, 6

*Smith v. Pennington*,
  352 F.3d 884 (4th Cir. 2003).......................................................5, 6, 7

Appellate Case: 23-2625     Page: 3     Date Filed: 12/21/2023 Entry ID: 5346887

**INTRODUCTION**

Union Pacific tries move after move to avoid what was clear to everyone in the *Harris* class action: Todd DeGeer was a member of the *Harris* class when the *Harris* action was first filed, through class certification, and up until the Eighth Circuit decertified the class.

Despite this, the company asks this Court to hold that the named plaintiffs' class-certification motion in *Harris* somehow narrowed the class to exclude Mr. DeGeer from the class, and thus from any entitlement to tolling. But in addition to disregarding how *American Pipe* tolling is supposed to work, that argument runs aground on *Harris*'s actual record. In *Harris*, the district court, the plaintiffs, and even Union Pacific *itself* repeatedly recognized that the class included Mr. DeGeer and others like him up until the moment it was decertified. Under *American Pipe*, Mr. DeGeer's claims were therefore unequivocally tolled.

Even Union Pacific itself admits that *American Pipe* tolling is "designed to modify a statutory time bar where its rigid application would create injustice." Resp. at 22 (quoting *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 509–10 (2017)). But employing such a bar here, despite both parties' and the *Harris* district court's recognition that Mr. DeGeer was a part of the certified class "would create injustice."

1

# ARGUMENT

## I. Mr. DeGeer should not be deprived of *American Pipe* tolling on the ground that the *Harris* class was narrowed.

The principles articulated by the Supreme Court in *American Pipe* dictate that the filing of the *Harris* action tolled the statute of limitations for Mr. DeGeer's disparate-treatment claim. That is because the filing of that action did exactly what a statute of limitations is supposed to do: It gave Union Pacific notice "not only of the substantive claims being brought against [it], but also of the number and generic identities of the potential plaintiffs" whose claims it could face. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974). There was, as a result, no legitimate reason to enforce the statute of limitations against any of the *Harris* class members. As the Supreme Court has explained, tolling the limitations period under these circumstances spares the judicial system the "unnecessary filing of repetitious papers and motions" that Rule 23 was meant to avoid, *id.* at 550, by "encourag[ing] class members to rely on the named plaintiffs to press their claims" rather than make their own protective filings, *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–53 (1983).[1]

Over the course of the *Harris* litigation, nothing happened to disturb these basic facts. To the contrary, time and again, the parties treated Mr. DeGeer and others just like him as members of the *Harris* class. For instance, the federal district

---

[1] Unless otherwise noted, internal quotation marks, citations, and brackets are omitted from quotations throughout the brief.

Appellate Case: 23-2625     Page: 5     Date Filed: 12/21/2023 Entry ID: 5346887

court presiding over the class litigation informed Mr. DeGeer that a list with his name on it was a "class list." *Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 627–28 (D. Neb. 2019); App. 178, R. Doc. 17-12, at 29. The court also specifically identified the *Harris* plaintiffs' class-certification declarants—including Mr. DeGeer—as "class members" who experienced the discrimination the certified class alleged. *See Harris*, 329 F.R.D. at 624 & n.3; App. 60, R. Doc. 16, at 10; App. 161–62, R. Doc. 17-3, at 45–46. And Union Pacific itself adopted the same understanding in its own briefs. *See* App. 282–85, 306–08, R. Doc. 17-20, at 11–14, 35–37; App. 246, R. Doc. 17-19, at 8; App. 62, R. Doc. 16, at 12; App. 261, R. Doc. 17-19, at 23.

To escape the straightforward conclusion that these events entitle Mr. DeGeer to tolling, Union Pacific does not engage with the core principles articulated in *American Pipe*. Instead, it argues that even if Mr. DeGeer was entitled to *American Pipe* tolling *initially*, he lost that tolling when the *Harris* plaintiffs moved for class certification—because he should have known that slight changes in the phrasing of the class definition excluded him. That argument is wrong four times over. *First*, it ignores the logic behind *American Pipe* tolling. *Second*, it lacks support in the case law of this or any other circuit. *Third*, it misapprehends the record, which illustrates that everyone in *Harris* understood perfectly well that Mr. DeGeer and those similarly situated remained members of the *Harris* class throughout the litigation. And *fourth*, it misconstrues the proposed class definition, which encompassed Mr. DeGeer.

Appellate Case: 23-2625     Page: 6     Date Filed: 12/21/2023 Entry ID: 5346887

**A.** As an initial matter, by skating past what the parties to the *Harris* litigation actually thought and focusing instead (at 13–17) on technical arguments about the meaning of the class-certification definition, Union Pacific loses sight of the basic equities of *American Pipe* tolling. As we explained in the opening brief (at 37–39), tolling does not turn on the fine nuances lawyerly ears might discern in different formulations of a class definition. It's supposed to extend to "all those who *might* subsequently participate" in a suit, *Am. Pipe*, 414 U.S. at 551 (emphasis added), and to entitle them to "rely on the named plaintiffs to press their claims" so as to spare the litigation system from a multitude of protective filings, *Crown, Cork*, 462 U.S. at 352–53.

In focusing on the class definition in the abstract, Union Pacific's approach makes those goals all but impossible. Under the company's view of *American Pipe* tolling, even a class member whose name appeared on a "class list" and who had been identified *by name* in a court order as a "class member" could not be confident that they were entitled to tolling. *See Harris*, 329 F.R.D. at 624, 627–28 & n.3. After all, some later district court might decide that a previously unexamined nuance in a class definition in fact excludes them from the class and thus from tolling too. Union Pacific's rule would therefore compel assiduous plaintiffs' counsel to file protective filings for almost any class member, thereby undermining the very efficiencies *American Pipe* was supposed to protect. *See Am. Pipe*, 414 U.S. at 550; *Great Plains Tr. Co.*

Appellate Case: 23-2625     Page: 7     Date Filed: 12/21/2023 Entry ID: 5346887

*v. Union Pac. R.R. Co.*, 492 F.3d 986, 997 (8th Cir. 2007) ("The *American Pipe* rule is designed to protect the federal procedural interest by preventing duplicative litigation from purported class members[.]").

But Union Pacific doesn't even attempt to explain how an account of *American Pipe* tolling that requires plaintiffs to monitor a proposed class for barely perceptible changes, carefully parse its meaning, and go so far as to *affirmatively disregard* statements by the presiding court that they remain "class members" could be reconciled with the ends the Supreme Court has said the doctrine serves.

**B.** Instead, the company largely sets aside the reasoning and purpose of *American Pipe* tolling. It asks the Court (at 26–28) to follow two out-of-circuit cases that, it argues, stand for the broad principle that anytime a motion for class certification articulates a class definition that is in some way narrower than the definition in the initial complaint, tolling ceases for those not covered by the updated definition. *See Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248, 253 (10th Cir. 1994); *Smith v. Pennington*, 352 F.3d 884, 891–94 (4th Cir. 2003). But neither case actually articulates that rule.

Rather, in both, the initial scope of the class was unclear, and the class-certification motion only clarified who was in the class in the first place. In *Sawtell*, for instance, a medical-device class action was filed in Minnesota, and the plaintiffs moved for certification of a class consisting solely of "persons who received the

5

implants in Minnesota." 22 F.3d at 253. Although the initial complaint did not *explicitly* specify that the class was limited to Minnesotans, the Tenth Circuit held that that was what it had meant and explained that the subsequent certification order simply clarified as much. *Id.* And when the Ninth Circuit later cited *Sawtell*, it did so only for the principle that tolling applies to those who were initially "asserted class members" and not to a later "expand[ed]" class. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 936 (9th Cir. 1996).

And Union Pacific's other case, *Smith*, took a similar tack as *Sawtell*: It explained that the class-certification motion there unambiguously clarified a previously "uncertain[]" initial description. 352 F.3d at 891. Indeed, far from endorsing Union Pacific's view that district courts are entitled to apply a fine-toothed comb to a class definition, *Smith* rejects that very approach. As it explains, the scope of tolling turns on whom *the parties themselves* treated as belonging to the class, as gleaned from evidence of their dealings and "assumption[s]"—not on whom some later district court thinks the definition encompasses. *See id.* at 891–93 (considering "evidence outside of the complaint" that demonstrated what class the plaintiff "desired to have certified" and who the parties had "assum[ed]" was in the class). For good reason. As we explained above, that approach best accords with the basic principles of *American Pipe* tolling: It focuses on whether the parties themselves had fair notice of the "substantive claims and the number and generic identities of the

potential plaintiffs that might participate in the judgment." *Id.* at 893. And it avoids penalizing unsuspecting class members for relying on those understandings.

The out-of-circuit district court decisions Union Pacific relies on (at 25–26, 28–29) provide no more help. To the contrary, they demonstrate why, given the notice to both Mr. DeGeer and Union Pacific, Mr. DeGeer's claims should have been tolled. For example, in *Ganousis v. E.I. du Pont de Nemours & Co.*, the court focused on what the "tolling concept is grounded on"—"notice." 803 F. Supp. 149, 154 (N.D. Ill. 1992); *see* Resp. Br. at 25–26.[2] It held that tolling only ended at the "point" when plaintiffs received clear notice "that they could not look to the pending [class] actions to protect their interests." *Ganousis,* 803 F. Supp. at 155–56. But here, the class certification order gave Mr. DeGeer clear notice that he *was* part of the certified class: the order explicitly included his name as one of the "44 class members." *See Harris*, 329 F.R.D. at 624 & n.3. As a result, the notice Mr. DeGeer was given told him that the class action *would* protect his interests.

---

[2] Union Pacific claims (at 25) that *Ganousis* presents "the very question presented in this case." But, just like in *Sawtell*, the initial scope of the class in *Ganousis* was unclear and it was only later, in the class-certification motion, did class counsel clarify who was in the class in the first place. *See* 803 F. Supp. at 151–52 & n.4 (noting that the language of the initial complaint created "doubt" as to who was "inclu[ded in] the purposed class"). That's why, instead of parsing the initial class definition, the court focused its analysis on when the parties were clearly given "legal notice" of who was in the class. *Id.* at 155.

7

Union Pacific also cites cases focusing on fair notice to defendants, but that principle likewise supports tolling here. *See* Resp. Br. at 28 (citing *In re Indep. Serv. Orgs. Antitrust Litig.*, 1997 WL 161940, at *3 (D. Kan. Mar. 12, 1997)). As the court in *Independent Service Organizations* explained, "tolling generally will be appropriate" if "the class suit was sufficiently similar to give defendant ample notice of plaintiff's individual claim." *Id.* at *3. Since Union Pacific itself recognized that the 44 declarations, one of which was Mr. DeGeer's, were "illustrat[ions]" of the workers in the class, it had more than ample notice of Mr. DeGeer's individual claim. App. 306–07, R. Doc. 17-20, at 25–26; *see, e.g.*, *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718–19 (8th Cir. 1993) ("The *American Pipe* rule is consistent with the purpose of statutes of limitation, which is to guarantee defendants fair and timely notice of the substantive claims being brought against them and the number and generic identities of the potential plaintiffs." (quoting *Am. Pipe*, 414 U.S. at 555)).

**C.** In any event, even assuming that a later unambiguous narrowing of a class could deprive a plaintiff of *American Pipe* tolling, that did not happen here. As we detailed in the opening brief (at 30–33), the *Harris* class was never narrowed to exclude employees like Mr. DeGeer. To the contrary, everyone in *Harris*—the plaintiffs, the federal court, and Union Pacific itself—repeatedly acknowledged their inclusion. *See* Op. Br. 30–33. In arguing otherwise, Union Pacific barely engages with the opening brief's detailed account of how, in *Harris*, all parties acknowledged that

8

Mr. DeGeer, and others just like him, were part of the class. It only quibbles with one point: whether the company called the list of employees it produced a "class list" before the class was certified.

Start with what Union Pacific does not contest. As to the "class list," it does not dispute that the *Harris* district court referred to the list of employees on the spreadsheets the company produced during discovery—which included Mr. DeGeer—as the "class list." *Harris*, 329 F.R.D. at 624, 627–28; *see* App. 178, R. Doc. 17-12, at 29. Or that the district court then explicitly approved the sending of class notice to everyone who appeared on it. *Harris*, 329 F.R.D. at 624, 627–28; *id.* ("approv[ing]" the sending of notice to Union Pacific's entire 7,723-person "class list"). It also does not dispute that Union Pacific itself then adopted the same understanding, after the district court certified the class, when the company sought to have the class decertified. *See* App. 246, 261, R. Doc. 17-19, at 8, 23; (Union Pacific describing the certified class to the Eighth Circuit as composed of that same group of "more than 7,000 current and former Union Pacific employees"); App. 282–85, 306–07, R. Doc. 17-20, at 11–14, 35–36 (similar). That gives away the game. *American Pipe* tolling applies to all those who *might* subsequently participate in a suit—which, here, means it applies to every current and former Union Pacific employee on the produced lists, Mr. DeGeer included.

9

In an attempt to avoid this straightforward conclusion, the company zeroes in (at 7–8, 19) on its own description of the list when it was first produced, emphasizing that it did not then characterize the spreadsheet as a "class list." But the statements Union Pacific cites on this score were made prior to the district court's 2019 class-certification order. *See* Resp. Br. at 7–8 (citing discovery responses, a letter, and an email Union Pacific wrote in February and May of 2018, over nine months before the district court's order); *Harris*, 329 F.R.D. 616. So even if Union Pacific initially disputed whether its spreadsheet was a class list, once the district court determined that was so, Union Pacific fell in line. In multiple briefs to the Eighth Circuit, Union Pacific followed the district court in recognizing that the spreadsheet it had produced was a list of class members. *See* App. 246, 261, R. Doc. 17-19, at 8, 23; App. 282–85, 306–07, R. Doc. 17-20, 11–14, 35–36 (similar).[3]

Alternatively, Union Pacific argues (at 19) that its spreadsheet could not be a class list because it was produced before the *Harris* plaintiffs "revised and narrowed the class definition." But that argument also doesn't hold up: When the district court designated the produced list as the "class list," it specifically did so for the class definition it certified. *Harris*, 329 F.R.D. at 621, 627–28.

---

[3] Nor is the letter Union Pacific cites from class counsel (at 7–8) any more relevant. It is also from May 2018—nine months before the district court and parties recognized the produced spreadsheet as a class list. Resp. Br. at 7–8 (Citing App. 614; R. Doc. 31-3, at 1); *Harris*, 329 F.R.D. 616.

10

In a last attempt to claim it did not "produce[] a class list," Union Pacific cites (at 8–9, 19) a different individual case from the *Harris* class that never confronted the tolling issue, let alone the evidence concerning the parties' understanding of the class list at the time of class certification. *See Owen v. Union Pac. R.R. Co.*, 2020 WL 6684504, at *5–6 & n.2 (D. Neb. Nov. 12, 2020) (explaining that the court did not address tolling because Union Pacific did "not press the timeliness issue"). Mr. DeGeer's case is also dissimilar from *Owens* in another important way—unlike in *Owens*, the district court presiding over the *Harris* class certification identified Mr. DeGeer by name as a certified "class member[]." *Harris*, 329 F.R.D. at 624 & n.3.

Union Pacific conspicuously has no response to the fact that the *Harris* district court found each of the declarants—including Mr. DeGeer—to be "class members." *Id.* at 624. That is unsurprising, but it's also fatal to Union Pacific's argument. The court that actually presided over the *Harris* certification explicitly stated that the declarants—including "DeGeer"—had "experienced the discrimination alleged" by the certified class and were "class members." *Id.* at 624 & n.3. Given this, Mr. DeGeer's entitlement to tolling could hardly be clearer.

And even assuming it matters, this statement was not dicta. The determination that the declarants were class members was key to court's class certification ruling. That is because the court's conclusion that the named plaintiffs satisfied Rule 23(a)'s adequacy requirement was explicitly premised on a comparison between the named

11

plaintiffs and the "44 class members" who had submitted declarations. *See id.* at 624. It was precisely because the named plaintiffs' and the declarants' interests were aligned, and so the named plaintiffs could adequately represent "the putative class members," that the court was willing to certify the class. *Id.*[4]

Finally, it is particularly ironic for Union Pacific to argue that Mr. DeGeer and the other declarants like him were not class members when the company itself specifically cited their declarations as "illustrat[ions]" of the workers in the class. *See* App. 306–07, R. Doc. 17-20, at 35–36. Union Pacific even argued on appeal that the class was overbroad precisely because of the inclusion of two declarants that had the same experience as Mr. DeGeer. *Id.* (citing Mr. Barkmeier's declaration); *see* App. 158–59, R. Doc. 17-3, at 6–7; App. 261, R. Doc. 17-19, at 16 (citing Mr. Donahue's declaration); App. 163–64, R. Doc. 17-3, at 50–51.

Union Pacific can't have its cake and eat it too. It used the fact that the *Harris* class included the 7,000-plus employees it had identified, together with the

---

[4] Union Pacific also cites *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 996 (8th Cir. 2016), to argue that anything other than the actual class definition is "immaterial." Resp. Br. at 18. But setting aside the fact that *Sandusky* says nothing about how a class is defined for tolling purposes, given that the district court in *Harris* identified Mr. DeGeer *by name* as a class member in the class certification order, his inclusion in the class was both "clearly ascertainable" and "readily identifiable." *See Sandusky*, 821 F.3d at 996 (describing class ascertainability requirement); *Harris*, 329 F.R.D. at 627 (recognizing *Sandusky*'s requirement that a class "be adequately defined and clearly ascertainable" in granting class certification).

Appellate Case: 23-2625     Page: 15     Date Filed: 12/21/2023 Entry ID: 5346887

declarations of workers similarly situated to Mr. DeGeer, to support its argument in the Eighth Circuit that the class was overly broad and therefore should be decertified. The company cannot, in good faith, turn around and now argue that those very same workers were actually excluded from the class just because that assertion will help it here.

**D.** It is unsurprising that Mr. DeGeer was recognized as a class member throughout the *Harris* litigation. By its terms, he satisfied the definition of the certified class. *See Harris*, 329 F.R.D. at 628 (certifying class as "[a]ll individuals who have been or will be subject to a fitness-for-duty examination as a result of a reportable health event"). Mr. DeGeer experienced such a "reportable health event" when he failed the Ishihara test, signifying a possible vision deficiency—which then "trigger[ed] a Fitness-for-Duty evaluation." *See* App. 4, 6, R. Doc. 1, at 4, 6.

On appeal, Union Pacific recognizes (at 17) that a reportable health event could be "reveal[ed]" during a Federal Railroad Administration (FRA) certification exam like the Ishihara test. And it does not dispute that the failure of such a test could trigger a fitness-for-duty evaluation. *See* Resp. Br. at 17; Op. Br. at 9 (citing App. 121, R. Doc. 17-2, at 4, Union Pacific's Director of Clinical Services stating that reportable health events that "trigger" the company's fitness-for-duty evaluation could also be "discover[ed]" "during [a] required regulatory examination . . . such as an FRA

13

examination"). To nevertheless avoid the conclusion that Mr. DeGeer fits the class definition, it tries two arguments.

*First*, Union Pacific argues (at 12, 17–18) that Mr. DeGeer's fitness-for-duty evaluation was not a result of the failure of his Ishihara test but instead that his fitness-for-duty evaluation "result[ed]" from his periodic FRA "regulatory certification process." But as we explained in the opening brief (at 35), that reasoning mixes up the basic principles of causation. The FRA re-certification triggered the failed Ishihara test, which in turn triggered the fitness-for-duty evaluation, including the Light Cannon test. The company essentially admits as much. It concedes that Mr. DeGeer took the Ishihara test because of a "routine FRA certification process" and, "because he failed the Ishihara [] test, the FRA certification process continued, and [Mr.] DeGeer then took and failed Union Pacific's CVFT [the Light Cannon test]." Resp. Br. at 4. Had Mr. DeGeer passed the Ishihara test, he would not have been directed to take the Light Cannon test. So, while the FRA re-certification may have been a *but-for* cause of his fitness-for-duty evaluation, it was the failure of the Ishihara test that was its *proximate* cause.

*Second*, the company claims that Mr. DeGeer's failed Ishihara test shouldn't count as a reportable health event because it did not identify a *change* in Mr. DeGeer's vision. Resp. Br. at 16. But, as we explained in the opening brief (at 9), that assertion conflicts with how Union Pacific has long treated the definition of a "reportable

14

health event." For example, Union Pacific has never disputed that the very first named plaintiff in the *Harris* action, Mr. Harris, was a class member despite experiencing no "change" in the epilepsy that triggered his fitness-for-duty evaluation. *See* App. 80–81, R. Doc. 17-1, at 9–10.

Moreover, Union Pacific has itself recognized that Mr. DeGeer had a "reportable health event" in connection with his fitness-for-duty evaluation. *See* App. 55–56, R. Doc. 16, at 5–6 (listing Mr. DeGeer as a worker who was "subject to a Fitness for Duty Evaluation related to a reportable health event"); App. 173, R. Doc. 17-9, at 5.[5] Indeed, the reason the plaintiffs adopted the "reportable health event" language in the first place was because Union Pacific suggested it described Mr. DeGeer's experience and that of others like him. *See* App. 54–58, R. Doc. 16, at 4–8.[6]

---

[5] As we noted in the opening brief (at 12 n.4 and 37), and Union Pacific does not dispute, the parties in *Harris* treated causal language ("evaluations that were initiated *because of* a Reportable Health Event") as the equivalent of looser constructions ("evaluations *related to* Reportable Health Events"). *See* App. 199–201, R. Doc. 17-14, at 3–5.

[6] When the class action was first filed, the *Harris* plaintiffs described the class as individuals who "suffered [] adverse employment action . . . for reasons related to a Fitness-for-Duty evaluation." App. 89, R. Doc. 17-1, at 18. And at first, that's who the plaintiffs asked Union Pacific to identify. *See* App. 172–73, Doc 17-9, at 4–5. But Union Pacific refused, objecting to that request "as overly broad, unduly burdensome, and beyond the scope of discovery" "to the extent it seeks information regarding Fitness-for-Duty evaluations other than those involving Reportable Health Events." *See* App. 193–94, R. Doc 17-3, at 15–16. Union Pacific represented that if the class definition was untethered from the term "reportable health events," the class would include over 191,000 employees. *See* App. 58, R. Doc. 16, at 8; App. 291, R. Doc.

In sum, in failing the Ishihara test, Mr. DeGeer experienced a "reportable health event," regardless of whether he documented a specific vision change, and he was sent to a fitness-for-duty evaluation as a result. He therefore fell squarely within the *Harris* proposed class definition. That's what the district court that presided over the *Harris* litigation decided in identifying him as a "class member[]," and Union Pacific has provided no justification to deviate from that conclusion.

## CONCLUSION

The district court's judgment should be reversed.

Respectfully submitted,

*/s/ Matthew W.H. Wessler*
MATTHEW W.H. WESSLER
LINNET R. DAVIS-STERMITZ
Gupta Wessler LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
matt@guptawessler.com

JESSICA GARLAND
Gupta Wessler LLP
505 Montgomery Street, Suite 625

---

17-20, at 20; *see also* Resp. Br. at 8 n.3. So Union Pacific insisted on limiting the list of names it would produce to employees "who were subject to a Fitness for Duty Evaluation related to a Reportable Health Event." App. 193–94, Doc 17-3, at 15–16. With this limitation, Union Pacific produced the final list of 7,723 employees. *Id.* The company argued that this limitation was "sufficient[]" to identify the class as described in the amended complaint. *Id.* And the plaintiffs adjusted the definition accordingly.

Appellate Case: 23-2625   Page: 19   Date Filed: 12/21/2023 Entry ID: 5346887

San Francisco, CA 94111
(415) 573-0336

JAMES H. KASTER
LUCAS J. KASTER
Nichols Kaster, PLLP
4700 IDS Center
80 South 8th Street
Minneapolis, MN 55402
(612) 256-3200

December 20, 2023                    *Counsel for Plaintiff-Appellant*

Appellate Case: 23-2625    Page: 20    Date Filed: 12/21/2023 Entry ID: 5346887

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,238 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font. This brief and the corresponding addendum comply with the virus scan requirements required by Local Rule 28A(h)(2) and is virus-free.

December 20, 2023

*/s/ Matthew W.H. Wessler*
Matthew W.H. Wessler

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Eighth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Matthew W.H. Wessler*
Matthew W.H. Wessler